**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BOARD OF EDUCATION** | * | |
| **OF MONTGOMERY COUNTY,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Civil No. PJM 05-118** |
| | * | |
| **WALTER SHELL II, et.al,** | * | |
| | * | |
| **Defendants** | * | |

**MEMORANDUM OPINION**

The Board of Education of Montgomery County appealed the decision of an administrative law judge ("ALJ") ordering the Board to reimburse Walter Shell, II's parents for the cost of his residential placement at a private facility, pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. The Court issued an Order affirming the ALJ's finding that the Board failed to provide Walter with a free appropriate public education ("FAPE") between December 2003 and June 2004 and that Walter's placement at the facility known as KidsPeace in Saylorburg, PA was appropriate to meet his needs.[1] The Court, however, was unable to determine the extent to which medical costs at the private facility might be separable from non-medical care (including room and board), the latter being reimbursable, the former not. 34 C.F.R. § 300.104.[2] Accordingly, the Court authorized further discovery and briefing on the point. Following discovery, the Court issued an Order holding that the Board

---

[1] *See Bd. Of Educ. Of Montgomery County v. Shell II, et al.,* Civil No. PJM 05-118, at 2-4 (D. Md. December 20, 2005).

[2] Pursuant to 34 C.F.R. § 300.104, "If placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child."

2

should pay for Walter's room and board as well as his non-medical costs at KidsPeace, but that substance abuse and psychological counseling there went beyond the scope of mere diagnostic counseling, and constituted medical services not reimbursable under the IDEA.[3]  The Court found the educational expenses to constitute no more than two-thirds of the total payment to KidsPeace, and accordingly reduced the reimbursement ordered by the ALJ from $43,500 to $29,000.

The Shells now ask the Court to order the Board to pay their attorney's fees and costs, totaling $67,870.82.

## A.

In support of their motion, the Shells argue that as a "prevailing party" within the definition of the IDEA, they are entitled to a full award of reasonable attorney's fees and litigation expenses.  The Board cites three reasons why the Shells' fees should not be reimbursed in their entirety.  First, it contends that the $5,198.50 claimed by the Shells for Attorney Demeroto's legal work should not be allowed because Demeroto was not admitted to practice in Maryland during the time for which fees are claimed for her, allegedly in violation of *Business Occupations and Professions Article,* section 10-101(h)(2)(iii).  The Shells submit that because Demeroto's work was undertaken in association with and under the supervision of Mark B. Martin, Esquire, an attorney fully admitted in Maryland, she was permitted to provide legal services on a temporary basis subject to the Rule of Professional Conduct 5.5 (c)(1) and (2).

---

[3] *See Bd. Of Educ. Of Montgomery County v. Shell II, et al.,* Civil No. PJM 05-118, at 2-4 (D. Md. April 13, 2009).

3

Second, the Board contends that the requested fee claim should be reduced to reflect the Shells' role in unnecessarily complicating and unreasonably protracting final resolution of the case.  Unable to assess precisely which fees charged by the Shells' attorney were the product of their purportedly calculated attempt to unreasonably protract the proceedings, the Board recommends a reduction of fifty percent of all fees charged subsequent to the Court's Order of December, 2005.  The Shells counter that it was the Board that was responsible for unreasonably protracting the case by engaging in overbroad and unnecessary discovery, wherein they essentially attempted to relitigate the underlying claims.

Finally, the Board contends that the fee claim should be reduced to two-thirds to reflect that the Shells' success on the merits of this appeal was only partial.  Because, in light of this Court's April 13, 2009 Opinion and Order, the Shells can only claim prevailing party status as to two-thirds of their original claim, their fees claim ought to be awarded in the same proportion. The Shells suggest that the overall focus of the case has been whether or not Walter received a FAPE, a finding as to which they clearly prevailed both before the ALJ and before this Court. The extent of their recovery of the cost for KidsPeace, they say, was an issue that arose only after the Court affirmed the finding that Walter had not received a FAPE.  The Shells submit that their fundamental success on the merits of the case should be fully rewarded.

**B.**

The IDEA permits the award of reasonable attorney fees and costs to prevailing parties in actions brought pursuant to this Act. 20 U.S.C. §1415(i)(3)(B)(i)(I).  Three fundamental purposes have guided the courts in their development of the law concerning attorney's fees in the related context of the civil rights statutes.  First, fee shifting statutes are intended to attract

4

competent counsel to prosecute federal civil rights claims by ensuring full payment of fees to prevailing plaintiffs. *See Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989); *Bond v. Blum*, 317 F.3rd 385, 399 (4th Cir. 2003). Second, assessing fees against people who perpetrate civil rights violations are meant to serve as disincentives to such violations. *See Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Third, the prospect of substantial fee awards is intended to encourage defendants to promptly settle meritorious civil rights claims. *See Woods v. Graphic Communications*, 925 F.2d 1195, 1207 (9th Cir. 1991).

### C.

### 1.

The Court of Appeals of Maryland has made clear in the Rules of Professional Conduct[4] that a lawyer admitted in another United States jurisdiction, who is not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in Maryland if the services (1) are undertaken in association with a lawyer who is admitted to practice in Maryland and who actively participates in the matter; or (2) are related to a pending proceeding before a tribunal for which the lawyer is authorized to appear. *Md. Rules of Professional Conduct 5.5(c)(1) and (2).*

During the limited time in question here (September 2005 – January 2006), Demeroto was properly admitted to the bars of Arizona and New York. She was not operating her own firm in Maryland but was providing legal assistance under the supervision of Mark B. Martin, Esquire, an attorney barred in this State. Her work was thus undertaken in association and under the active supervision of an attorney admitted to practice here, as required by subsection (c)(1) of

---

[4] The Rules of Professional Conduct as they have been adopted by the Maryland Court of Appeals also apply in this Court. *See* Local Rule 704.

5

Rule 5.5, and her services were related to a pending proceeding for which the attorney was authorized to appear, as required by subsection (c)(2). *See also In the Matter of the Application of R.G.S. for Admission to the Bar of Maryland*, 312 Md. 626 (1985) (holding that a lawyer admitted to practice in another state was not engaged in the unauthorized practice of law because the work was done under the supervision of a licensed Maryland lawyer and performed in a way that insulated the practitioner from direct contact with lay clients or the courts). Demeroto's participation in the case was appropriate.

Recognizing Demeroto's limited experience in Maryland, the Shells set her hourly rate at $185, well below the recommended base rate of $275, *Local Rules, Appendix B., Rule 3*. This voluntary reduction was reasonable and will not be modified by this Court. There is no challenge to the number of hours Demeroto put in.

**2.**

20 U.S.C. §1415(i)(3)(F)(i) states, in pertinent part, that "whenever the court finds that the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy...the court *shall* reduce, accordingly, the amount of the attorney's fees awarded under this section." *Id*. (emphasis supplied). While the Court agrees that these proceedings have bumped along for a very considerable time, it is not prepared to assign fault for unreasonable delay to either side. Accordingly, the Court will not assign a reduction of the requested fee on this ground.

**3.**

In *Hensley v. Eckerhart*, 461 U.S. 424, (1983), the Supreme Court stated that in calculating a prevailing party's attorneys' fees in civil rights litigation, "the district court should

6

focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

reasonably expended on the litigation." 461 U.S. at 434.  *Hensley* goes on to state that in

calculating fees, "the district court may attempt to identify specific hours that should be

eliminated, or it may simply reduce the award to account for the limited success. The court

necessarily has discretion in making this equitable judgment."  *Id* at 436-37; *see also G., ex rel.*

*R.G. v. Ft. Bragg Dependent Schools*, 343 F.3d 295, 310 n.20 (4th Cir. 2003).

A central issue in this case has been whether, and to what extent, the medical costs at the

private facility where Walter was placed were separable from the educational and related costs.

Though the Shells obtained complete relief from the ALJ in the amount of $43,500.00, in this

Court, they eventually prevailed on only two-thirds of their original claim.  The Court, exercising

its discretion, believes under all the circumstances, that a reduction of the fee requested by one-

third is fair and reasonable.

Accordingly, Walter Shell, II's Motion for Attorney Fees [Paper No.76 ] is **GRANTED**

**IN PART** and **DENIED IN PART**.  It is **GRANTED** in so far as the Court awards the Shells

attorney's fees in the amount of $44,529 (= 2/3 of $66,793.50).  The court also awards the Shells

costs in the amount of $1,077.32.  This results in a total amount of $45,606.32.

In all other respects, the Motion for Attorney Fees is **DENIED**.

A separate Order shall be **ENTERED**.


                                                    _____/s/_____
                                                    **PETER J. MESSITTE**
                                                    **UNITED STATES DISTRICT JUDGE**

**August 13, 2009**